IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 331DC, LLC and SALTCHUK RESOURCES, INC., | : | |
| Plaintiffs, | : : : | |
| v. | : | C.A. No. 15-1217-LPS |
| DASSAULT FALCON JET - WILMINGTON CORP., a Delaware Corporation, | : : : : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **27th** day of **January, 2017**, having reviewed the parties' briefing (D.I. 16, 19, 20, 21, 23, 24) and related filings regarding Plaintiffs 331DC, LLC ("331DC") and Saltchuk Resources, Inc.'s ("Saltchuk") Motion for Partial Summary Judgment (D.I. 15) ("Plaintiffs' Motion") and Defendant Dassault Falcon Jet - Wilmington Corp.'s Motion for Summary Judgment or Partial Summary Judgment (D.I. 18) ("Defendant's Motion"), and having heard oral argument, **IT IS HEREBY ORDERED** that, for the reasons below, Plaintiffs' Motion (D.I. 15) is **GRANTED** and Defendant's Motion (D.I. 18) is **GRANTED IN PART** and **DENIED IN PART.**

I.  **BACKGROUND**

Plaintiffs filed this action in diversity under 28 U.S.C. § 1332 to recover damages allegedly caused by Defendant's negligent handling of an aircraft leased by Plaintiffs. (*See* D.I. 1 ¶¶ 5, 13-15) The parties stipulated to certain facts relevant to their disputes. (*See* D.I. 9)

1

("Stipulation") The facts recited herein are taken from the parties' Stipulation, unless otherwise noted.

331DC leased a 2008 Falcon Model 2000DX aircraft ("Aircraft") from GC Air, LLC ("GC Air") pursuant to an Aircraft Lease Agreement dated March 7, 2008.[1] (D.I. 9 ¶ 4) The Aircraft, a twin-engine transcontinental business jet, was manufactured by Dassault Aviation. (*Id.* ¶ 6) By a Transfer and Assumption Agreement dated July 11, 2011, 331DC and Saltchuk became co-lessees of the Aircraft.[2] (*Id.* ¶ 5) Saltchuk is the sole, and managing, member of 331DC. (*Id.* ¶ 3)

Defendant operates a service center for Falcon business jets at the New Castle County Airport in Delaware ("Dassault Aircraft Services"). (*Id.* ¶ 8) The Dassault Aviation-owned facility offers aircraft on-ground services, scheduled and unscheduled maintenance, complete interior refurbishment, avionics retrofits, strip and paint, structural repairs, and on-site engine maintenance. (*Id.*)

During the fourth quarter of 2012, Saltchuk scheduled the Aircraft for maintenance and repairs at Dassault Aircraft Services pursuant to an Aircraft Work Proposal and Agreement between Saltchuk and Defendant ("Proposal").[3] (*Id.* ¶ 9) Saltchuk's authorized agent accepted and agreed to the Proposal. (*Id.*)

Saltchuk presented the Aircraft to Defendant at Dassault Aircraft Services on January 14, 2013 for the maintenance and repair work to be performed by Defendant. (*Id.* ¶ 10) At that time,

---

[1] A copy of the Aircraft Lease Agreement may be found at D.I. 9 Ex. A.

[2] A copy of the Transfer and Assumption Agreement may be found at D.I. 9 Ex. B.

[3] A copy of the Proposal may be found at D.I. 9 Ex. D.

Saltchuk's authorized agent executed an Aircraft Work Authorization ("Authorization").[4] (*Id.*) The Court will refer to the Proposal and Authorization collectively as the "Contract."

Defendant stored the Aircraft at Dassault Aircraft Services until maintenance and repair work could be completed. (*Id.* ¶ 11) Accordingly, Defendant had possession of the Aircraft up to and including February 24, 2013. (*Id.*)

A portion of the maintenance and repair work involved partial removal of the Aircraft's interior. (*Id.* ¶ 12) To compensate for the impact that the partial interior removal had on the Aircraft's center of gravity, Defendant's personnel placed 600 pounds of ballast – in the form of lead plates and modified barbell weights – on boards inside the cabin. (*Id.*) With the ballast weights in place, the Aircraft was within the empty weight and balance envelope as specified in the Aircraft's loading manual. (*Id.*)

On the afternoon of February 24, 2013, the Aircraft was located in Hangar 3B. (*Id.* ¶ 13) Defendant moved the Aircraft out of Hangar 3B to facilitate moving other aircraft out of the hangar. (*Id.*) After towing the Aircraft out of Hangar 3B, Defendant left the Aircraft on a ramp outside of Hangar 3B. (*Id.* ¶ 14) Approximately 20 minutes after being parked on the ramp, the Aircraft's nose lifted off the ground, and the Aircraft tipped back on its main gears, causing the aft fuselage to come in contact with the ground (the "Incident"). (*Id.* ¶ 15) At the time of the Incident, winds at the New Castle County Airport were at 21.9 miles per hour and gusting to 31.1 miles per hour. (*Id.* ¶ 16) The ramp on which the Aircraft was parked sloped downward relative to the longitudinal axis of the Aircraft, increasing the angle of attack of the wing of the Aircraft and thereby increasing lift. (*Id.*)

---

[4] A copy of the Authorization may be found at D.I. 9 Ex. D.

As a result of the Incident and the Aircraft's impacting the ground, the Aircraft sustained internal and external damage, including damage to fuselage skins and to the Aircraft's frame. (*Id.* ¶ 17) In addition, aft bulkhead interior panels sustained damage when the ballast weight that had been placed inside the Aircraft slid aft as the Aircraft tipped back. (*Id.*)

Defendant repaired the damage – at Defendant's expense and to Saltchuk's satisfaction – that had been caused during the Incident. (*Id.* ¶ 18) The repairs were completed on September 22, 2013. (*Id.*) Defendant remained in possession of the Aircraft from the date of the Incident, on February 24, 2013, through completion of the Aircraft's repair, on September 22, 2013 (the "Repair Period"). (*Id.*) During the Repair Period, Plaintiffs were not able to use the Aircraft. (*Id.* ¶ 22)

Saltchuk and Defendant entered into a tolling agreement on February 20, 2015 to toll the applicable statute of limitations for claims relating to Defendant's alleged tort liability. (*See generally* D.I. 20-1 Ex. A)

Plaintiffs sued Defendant on December 29, 2015, alleging "breach of bailment" under a negligence theory. (D.I. 1 ¶¶ 13-15)[5] Plaintiffs seek loss-of-use damages in the form of "more than $1.1 million in lease payments for the Aircraft and roughly $500,000 in additional damages proximately caused by Defendant's negligence." (D.I. 16 at 1) Plaintiffs do not seek damages for diminution in value of the Aircraft. (D.I. 9 ¶ 22) Plaintiffs pleaded recovery of attorney fees and costs (D.I. 1 at 5) but now acknowledge that "they are not entitled to recover attorney fees at this stage of the case" (D.I. 20 at 12 n.2).

---

[5]Plaintiffs previously asserted a claim based on strict liability but subsequently agreed to dismiss this claim. (D.I. 20 at 12 n.2)

4

Defendant answered the complaint on January 20, 2016. (D.I. 5) Defendant argues that Plaintiffs are not entitled to any relief in light of (1) provisions in the Contract barring recovery of damages sought by Plaintiffs; (2) Plaintiffs' failure to show breach of bailment; (3) the economic loss doctrine; (4) Delaware's statute of limitations for tort liability; and (5) Plaintiffs' failure to allege damages that are compensable under Delaware law. (*See generally* D.I. 19)

The parties completed briefing on their motions on August 26, 2016. (D.I. 16, 19, 20, 21, 23, 24) The Court heard oral argument on October 25, 2016. (*See* Transcript ("Tr."))

## II. LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Choice of Law

The parties appear to agree that Delaware law governs the issues addressed in their Motions. (*See* D.I. 16 at 6; D.I. 19 at 1-2) "'The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.'" *Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*, 319 F. App'x 137, 140 (3d Cir. 2009) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Delaware law, "where the parties agree to a choice-of-law provision to govern their contractual rights and duties, that choice should be enforced." *Id.* at 141 (internal quotation marks omitted). The Contract at issue in this case includes a Delaware choice-of-law provision. (*See* D.I. 9-6 at 10) Thus, the Court will interpret the Contract under Delaware law.

With respect to Plaintiffs' tort claims, "Delaware holds 'that the substantive rights of the parties in a tort action are governed by the law of the place where the tort arose.'" *Paoletto v. Beech Aircraft Corp.*, 464 F.2d 976, 979 (3d Cir. 1972) (quoting *Friday v. Smoot*, 211 A.2d 594, 595 (Del. 1965)). The alleged tort at issue in this case (the Incident) occurred in Delaware. Therefore, the Court will apply Delaware tort law.

### B. Defendant's Motion

Defendant moves for summary judgment or, in the alternative, partial summary judgment as to each of the following issues:

    (1)    Plaintiffs are not entitled to indirect, incidental, or consequential damages.

    (2)    Plaintiffs' strict liability count fails as a matter of law.

    (3)    The claims for breach of bailment fail because the Aircraft was not returned to Plaintiffs in a damaged condition.

    (4)    Plaintiffs are not entitled to reimbursement of their lease payments as damages.

    (5)    Plaintiffs are limited by the economic loss doctrine to a claim for breach of contract.

    (6)    Plaintiffs' claims are barred by the one-year limitation [on when suit could be brought under the Contract].

    (7)    Plaintiffs are not entitled to consulting fees and other expenses associated with "overseeing" repair work performed by Falcon Jet.

    (8)    Delaware's two-year statute of limitations for injury to personal property bars 331DC's claims.

    (9)    Plaintiffs would not be entitled to attorneys fees even if they were the prevailing parties.

(D.I. 18 at 1-2) The Court addresses each of these issues below.

### 1. Contractual Limits on Damages Recoverable by Plaintiffs

The Contract includes a clause entitled "limitation of liability" which states that "[i]n no event shall [Defendant] be liable for any special, incidental, indirect or consequential damages (including without limitation, damages for loss of profits, or business interruption) arising out of [Defendant's] performance of the aircraft services in connection with this agreement." (D.I. 9-6 at 10) The parties dispute whether the events of the Incident "[arose] out of . . . performance of the aircraft services in connection with [the Contract]," thus triggering the provision limiting damages.

Defendant contends that the limitation on damages does apply to the Incident. It argues that bailment of the Aircraft would not have existed but for the Contract (Tr. at 27) and that

"damage to the Aircraft occurred because of conditions created by the work undertaken on the Aircraft pursuant to the Contract, specifically removal of the interior, and the need to park the Aircraft between sessions of active work on it" (D.I. 19 at 6). In Defendant's view, the phrase "arising out of" in the limitation provision "is commonly understood to have a broad meaning," citing *Pacific Insurance Co. v. Liberty Mutual Insurance Co.*, 956 A.2d 1246, 1256-57 (Del. 2008). (D.I. 19 at 7) Thus, according to Defendant, "[t]he accidental damage to the Aircraft ***arose out of*** Falcon Jet's performance of aircraft services because there is a 'meaningful linkage' between the servicing of and the damage to the Aircraft." (*Id.*) (citing *Pac. Ins.*, 956 A.2d at 1256-57) (emphasis added)

Plaintiffs counter that Defendant's liability did ***not*** arise out of performance of services under the Contract. (D.I. 20 at 3-7) In support of their position, Plaintiffs cite *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 154-60 (Del. 2002). In *Parfi*, the Delaware Supreme Court applied "basic principles of contract interpretation" in holding that fiduciary duty claims were beyond the scope of an arbitration clause in a contract. *Id.* at 156. The Court held that the fiduciary duties owed rested on "an independent set of rights provided for in the Delaware corporation law." *Id.* at 158.

While *Parfi*'s facts are quite different from those presented here, the general principles of contract interpretation articulated by the Delaware Supreme Court in *Parfi* are fully applicable. They persuade the Court that Plaintiff is correct on this first issue. The limitation of damages clause does not apply to the Incident.

The purpose of the Contract at issue here was to perform "maintenance and repair work" on Plaintiffs' Aircraft. (Stipulation, D.I. 9 ¶ 10) The damage caused during the Incident did not

take place during performance of any of the maintenance or repair work agreed to pursuant to the Contract. (*See id.* ¶ 19) ("No personnel were in or near the Aircraft at the time of the Incident, and no witnesses to the Incident have been identified.") Thus, under the stipulated facts here, the damages did not "aris[e] out of . . . performance of the aircraft services in connection with [the Contract]."

The rights and duties at issue in this case sound in tort law – specifically, the rights and duties as between a bailor and bailee. Because no maintenance work was being performed on the Aircraft pursuant to the Contract at the time of the Incident, these rights and duties are independent of the contractual rights and duties which the parties assumed by executing the Contract. Thus, the Court agrees with Plaintiffs that their ***independent*** bailment claim under a negligence theory survives the Contract's limitation on damages as well as the Contract's one-year limitation on bringing an action for breach. (*See* D.I. 9-6 at 10) ("Any legal action by customer for breach must be commenced within one (1) year from the date of the breach.")

The Court's conclusion on this issue is bolstered by the fact that the Contract was drafted by Defendant. (*See* D.I. 9 Ex. D) The contract interpretation principle of *contra preferentem* requires that the Contract "be construed against the drafter." *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003). Thus, the Court agrees with Plaintiffs that "[a]ny doubt regarding the interpretation" of the Contract should be construed against Defendant. (D.I. 16 at 12) Here, there is sufficient doubt regarding the meaning of the limitation of damages clause to require the Court to construe the clause in Plaintiffs' favor.

In view of the above, Defendant's Motion is **DENIED** as to issues 1 and 6.

### 2. Plaintiffs' Strict Liability Claim and Claim for Attorney Fees

Plaintiffs have agreed to dismiss their strict liability claim and agree that they are not entitled to attorney fees at this time. (D.I. 20 at 12 n.2) Thus, Defendant's Motion is **GRANTED** as to issues 2 and 9. The Court's grant of summary judgment as to attorney fees is without prejudice to Plaintiffs seeking an award of attorney fees later in the case, should they have a good faith basis to do so.

### 3. Breach of Bailment Claim

Defendant argues that Plaintiffs' breach of bailment claim fails because the Aircraft was eventually returned to Plaintiffs without any damage. (D.I. 19 at 8-9) (citing *In re Wechsler*, 121 F. Supp. 2d 404, 437 (D. Del. 2000); *Miller v. Newsweek, Inc.*, 660 F. Supp. 852, 859 (D. Del. 1987); *Citadel Eng'g, Inc. v. Am. Aerospace Corp.*, 2011 WL 1632184, at *4-5 & n.2 (Del. Super. Ct. Apr. 26, 2011)) Plaintiffs counter that the case law cited by Defendant does not support a *requirement* that the bailed property be returned in damaged condition or not returned at all in order to support a claim for negligence under a bailment. (D.I. 20 at 10-12)

The Court agrees with Plaintiffs. Defendant's cases merely stand for the proposition that a "rebuttable presumption of negligence arises against the party who accepted the goods" when goods are returned in damaged condition or not returned at all. *See Wechsler*, 121 F. Supp. 2d at 437; *accord Miller*, 660 F. Supp. at 859; *Citadel*, 2011 WL 1632184, at *4-5 & n.2. Thus, Defendant's Motion is **DENIED** as to issue 3.

### 4. Reimbursement of Lease Payments

Defendant argues that Plaintiffs are not entitled to reimbursement of their lease payments to GC Air because (1) the lease costs were a preexisting cost and not a result of the damage to the

Aircraft; (2) the price of corporate jets was higher when Saltchuk leased the Aircraft than at the time of the Incident; (3) the Aircraft was a depreciating asset, making the lease payments five years into the lease a less accurate measure of the value of the Aircraft than at the beginning of the lease; and (4) "Delaware law does not provide for recovery of rental cost – absent actual rental – in the case of commercial chattels." (D.I. 19 at 9-12) Plaintiffs respond that (1) this challenge to Plaintiffs' damages theory was not identified as a potential topic for the parties' early summary judgment motions and (2) Delaware case law does not support Defendant's assertion that Plaintiffs' reimbursement damages are barred. (D.I. 20 at 12-14)

Regarding the parties' dispute about the scope of their early summary judgment motions, Plaintiffs appear to have in good faith believed that Defendant was *not* going to challenge Plaintiffs' damages theories at this stage of the case. (*See generally* D.I. 21, 23, 24) In any event, the Court agrees with Plaintiffs that Delaware law does not bar loss of use damages under the facts presented by the parties (when viewed in a light most favorable to Plaintiff) and under facts which may be developed after Plaintiffs have a chance to take full discovery. As argued by Plaintiffs, Delaware law permits potential recovery of *all* damages suffered by a party that are caused by a tortfeasor. *See Stayton v. Delaware Health Corp.*, 117 A.3d 521, 534 (Del. 2015) ("In Delaware, a plaintiff is entitled to compensation sufficient to make him whole . . . [and] the remedy for the tort should put the plaintiff as close as possible to the same position as she was in before the injury."). Defendant acknowledges that Plaintiffs claim as damages the cost of chartering another aircraft for at least one flight while Defendant completed repairs on the Aircraft. (D.I. 19 at 10) At the very least, Plaintiffs have presented a disputed issue of material fact as to whether they may recover as damages the cost of chartering another aircraft.

Thus, Defendant's Motion is **DENIED** as to issue 4.

### 5. Economic Loss Doctrine

"[T]he threshold issue for determining whether the economic loss doctrine applies is whether defendant breached a duty independent of the contract obligations." *McKenna v. Terminex Int'l Co.*, 2006 WL 1229674, at *3 (Del. Super. Ct. Mar. 13, 2006). "'As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, 2005 WL 445710, at *3 (Del. Super. Ct. Feb. 23, 2005) (quoting *Pinkert v. Olivieri*, 2001 WL 641737, at *5 (D. Del. 2001)).

The Court has already determined that Plaintiffs' claims are independently rooted in tort law and do not arise out of the rights and duties in the Contract. Thus, the economic loss doctrine does not bar Plaintiffs' claims and Defendant's Motion is **DENIED** as to issue 5.

### 6. Consulting Fees and Other Expenses

Defendant argues that Plaintiffs are not entitled to recover consulting fees and expenses related to overseeing Defendant's repairs to the Aircraft, because it was unnecessary to oversee repairs conducted by "the original equipment manufacturer." (D.I. 19 at 18-19) Plaintiffs counter that recovery of these damages would be consistent with the general principle that all damages are recoverable under Delaware law. (D.I. 20 at 14-15) There are disputed issues of material fact as to whether the fees and expenses related to overseeing repairs were foreseeable damages. (*See, e.g.*, D.I. 20 at 14) (Plaintiffs asserting that parties agree that "'owners routinely have representatives present to observe aircraft repairs'") (quoting D.I. 19 at 19) Defendant's

Motion is **DENIED** as to issue 7.

### 7. Statute of Limitations

Defendant argues that all claims by 331DC are barred by Delaware's two-year statute of limitations for damages resulting from "'injury to personal property.'" (D.I. 19 at 19-20) (quoting Del. Code Ann. tit. 10, § 8107 (West 2016)) Plaintiffs counter that an agreement between Saltchuk and Defendant tolled the statute of limitations for all of Plaintiffs' claims. (D.I. 20 at 15) (citing Declaration of Randall Beighle, D.I. 20-1 ¶ 3; Tolling Agreement, D.I. 20-1 Ex. A) However, 331DC was not a party to the Tolling Agreement. (*See* D.I. 20-1 Ex. A at 1) (indicating agreement was between Saltchuk, Defendant, and GE Capital)[6]

The Court agrees with Defendant that 331DC's claims are barred by the statute of limitations. The Tolling Agreement only tolled the limitations period for "parties" to the Tolling Agreement, and 331DC was indisputably not a party to the Tolling Agreement. (*See* D.I. 20-1 Ex. A ¶ 2 under "AGREEMENT" heading) ("For purposes of any applicable limitation period regarding any and all claims, . . . relating to, arising out of, or connected with the damages to the Aircraft occurring as a result of the Incident, . . . any and all claims, defenses, rights, and liabilities that any of the *parties* has against or in regard to any other *party*, shall be tolled from the Effective Date of this Tolling Agreement . . . .") (emphasis added) Therefore, 331DC's claims were not tolled by the agreement and must now be dismissed. *See Caspian Alpha Long Credit Fund, L.P. v. GS Mezzanine Partners 2006, L.P.*, 93 A.3d 1203, 1205 (Del. 2014) ("Dismissal of a claim based on contract interpretation is proper if [Defendant's] interpretation is

---

[6]Defendant appears to have been insured by GE Capital, or General Electric Capital Corporation, via its affiliated entity AIG Aerospace. (D.I. 20-1 Ex. A at 1)

the only reasonable construction as a matter of law.") (internal quotation marks omitted).

Defendant's Motion is **GRANTED** as to issue 8.[7]

### C. Plaintiffs' Motion

Plaintiffs move for partial summary judgment "dismissing Defendant's contract-related defenses and allowing Plaintiffs to proceed with their bailment claims." (D.I. 16 at 1) The parties agree that the issues presented by Plaintiffs' motion overlap those presented by Defendant's motion, meaning that the Court's analysis above also resolves the issues presented by Plaintiffs. Hence, for the reasons discussed above, the Court determines that defenses arising under the Contract are not applicable to Plaintiffs' independently assertable tort claims. Plaintiffs' Motion is, therefore, **GRANTED**.

### IV. CONCLUSION

For the reasons above, the Court grants Plaintiffs' Motion (D.I. 15) and grants in part and denies in part Defendant's Motion (D.I. 18), as explained above.[8]

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

[7] There is no dispute that the Tolling Agreement tolled all claims with respect to Saltchuk, the parent of 331DC. Thus, the Court's grant of summary judgment on this issue does not affect any claims asserted by Saltchuk.

[8] Specifically, as noted above, Defendant's motion is granted with respect to issues 2, 8, and 9, and is denied with respect to issues 1, 3, 4, 5, 6, and 7.